# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| THELMA J. LYNCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:14-cv-1384 |
| | ) CHIEF JUDGE CRENSHAW |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Pending before the Court is Thelma J. Lynch's Motion for Judgment on the Administrative Record (Doc. No. 15), to which the Social Security Administration ("SSA") has responded (Doc. No. 17.) Plaintiff did not file a reply to the SSA's response. Upon consideration of the parties' briefs and the transcript of the administrative record (Doc. No. 12),[1] and for the reasons set forth below, Plaintiff's Motion for Judgment will be DENIED and the decision of the SSA will be AFFIRMED.

### I. Magistrate Judge Referral

In order to ensure the prompt resolution of this matter, the Court will VACATE the referral to the Magistrate Judge.

### II. Introduction

Plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act on March 15, 2011, and an application for disability insurance benefits

---

[1] Referenced hereinafter by "Tr." followed by the page number found in bolded typeface at the bottom right corner of the transcript page.

("DIB") under Title II of the Social Security Act on March 22, 2011,[2] alleging disability onset as of January 1, 2009, due to diabetes, neuritis, asthma, high blood pressure and migraines. (Tr. 333.) Her claim to benefits was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ"). Plaintiff's case was heard on December 10, 2012, when Plaintiff appeared with counsel and gave testimony. (Tr. 219-54.) Testimony was also received from an impartial vocational expert ("VE"). (Id.) At the conclusion of the hearing, the matter was taken under advisement until February 1, 2013, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 196-214.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The earnings record and the claimant's testimony establish that the claimant has not engaged in substantial gainful activity (SGA) since the alleged onset date.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [T]he claimant has the residual functional capacity (RFC) to perform lifting and/or carrying of 50 pounds occasionally and 10 pounds frequently; standing and/or walking of 2 hours, 30 minutes at one time, in an 8 hour workday; sitting of 7 hours in an 8 hour workday; occasional overhead reaching; frequent other reaching; frequent postural activities; occasional climbing of ladders and stairs; the avoidance of concentrated exposure to fumes, dust, gases, irritating inhalants, and temperature extremes; an ability to understand and carry out detailed tasks and instructions; have occasional interaction with the public; and have frequent interaction with coworkers and supervisors.

---

[2] The Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Part 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Part 416 of the regulations) are substantially identical. Barnhart v. Thomas, 540 U.S. 20, 24 (2003) (noting that the Title II and the Title XVI definition of "disability" is "verbatim the same" and explaining that "[f]or simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI.") The Court will cite to the regulations interchangeably.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was 49 years old (a younger individual age 18-49) on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a high school equivalence education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 198-99, 201, 208-09.)

On April 24, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1–6), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence based on the record as a whole, then those findings are conclusive. Id.

### III. Review of the Record

Plaintiff does not challenge her RFC or any of the ALJ's findings in steps one through four of the sequential evaluation process. She does not allege any errors regarding the ALJ's factual findings with respect to her severe impairments or her credibility, nor does she allege any errors regarding the ALJ's analysis of the medical records or opinion evidence. As such, a lengthy review of the record is unnecessary. To be sure, the ALJ reviewed all of the record

evidence including: (1) Plaintiff's medical records related to her physical and mental impairments from 2010-2012; (2) opinion evidence from state agency consultants and examiners, and (3) opinion evidence from treating sources. (Tr. 201-08.) Then, after considering all of this evidence, the ALJ concluded that:

> Substantial medically acceptable clinical findings; radiographic, laboratory, and psychological diagnostic techniques; physician, psychiatrist, psychologist, nurse practitioner, therapist, etc., opinions; and daily activities of living are consistent with the RFC, and the subjective complaints have been accepted as far as they are supported by the objective evidence and medical opinions.

(Tr. 208.) Plaintiff does not dispute this conclusion.

## IV. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

### B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

5

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert

6

testimony.  Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

Plaintiff alleges two errors:

1. Under the regulations and other policy guidance, a limitation to standing and walking of 2 hours in an 8 hours day is consistent with a finding that the claimant can perform "sedentary work," and not "light work" or "medium work." Pursuant to SSR 00-4p, an ALJ may not appropriately make findings or accept vocational testimony that is inconsistent with the exertion level definitions set forth in the regulations; in other words, an ALJ may not make a sedentary job "light" or "medium" by increasing the lifting requirements of the job.

2. The ALJ's step 5 error is probably not "harmless" because consideration of the exact same vocational factors of age, education, and past work experience direct a finding that she is "disabled" at a maximum RFC for "sedentary work"; however, the reason the record is unclear about this is that the ALJ never inquired about whether Ms. Lynch's past semiskilled jobs provided transferable skills to the sedentary level of exertion.

(Doc. No. 16 at Page ID## 733, 738.)

Specifically with respect to Plaintiff's first allegation of error, she argues that based on the ALJ's findings of fact, which she does not contest, the ALJ should have found that Plaintiff's RFC is "at the *sedentary* level." (Id. at Page ID# 733 (emphasis in original).) Plaintiff contends that the ALJ determined that Plaintiff's "RFC is at the medium exertion level." (Id. at Page ID# 734.) Plaintiff is mistaken. In his decision the ALJ stated as follows:

7

> <u>If</u> the claimant had the [RFC] to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.29 and Rule 203.22. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

(Tr. 208-09 (emphasis added.)) As is manifest, the ALJ did not determine that Plaintiff maintained the ability to perform jobs at the medium exertional level. If this fact were not abundantly clear already, after setting forth the VE's testimony regarding Plaintiff's past relevant work, all of which fell in the medium to heavy exertional level, the ALJ stated, "[t]he VE also testified that all past relevant work must be eliminated as beyond the requirements in the established RFC." (Tr. 208.) Thus, it is beyond cavil that the ALJ understood that Plaintiff could not perform work at the medium exertion level. Plaintiff's contention to the contrary is simply incorrect.

Plaintiff also argues that even a finding of "light work" would be improper because the ALJ's RFC assessment confined Plaintiff to jobs allowing her to, among other things, stand or walk for only 30 minutes at one time for a maximum of 2 hours a day. (Tr. 201.)

20 C.F.R. § 404.1567 defines the physical exertion classifications for work in the national economy. As pertinent here, § 404.1567 states:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. <u>To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.</u> If someone can do light work, we determine

8

> that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Id. (emphasis added.)) Plaintiff contends that because of her significant stand/walk restriction she cannot do a "good deal" of walking or standing, thus she is unable "to do substantially all" of the activities required to perform light work. Consequently, Plaintiff argues, an RFC finding that Plaintiff can do light work is erroneous. While Plaintiff's statement of facts is correct, her analysis is not.

Plaintiff accurately states that the stand/walk limitation prevents her from doing a "good deal" of walking or standing. (Id.) Plaintiff is also correct that based on the ALJ's RFC assessment, she is unable "to do substantially all" of the activities required to perform "a full or wide range of light work." (Id.) However, these facts do not, as Plaintiff reasons, exclude Plaintiff from doing any light work. Rather, as the ALJ found, they exclude Plaintiff from performing "a full or wide range of light work." (Id.) However, merely because Plaintiff could not do a full or wide range of light work did not dictate a finding that she could only perform sedentary work. See Blakenship v. Comm'r of Soc. Sec., 624 F. App'x 416, 429 (6th Cir. 2015) (rejecting Plaintiff's suggestion "that there is an either/or dichotomy between light work and sedentary work, and because she could not perform a full range of light work, she must necessarily have only been able to do sedentary work"). The regulations do not direct such a finding, nor do they force the ALJ to choose a single exertional level from a menu of exertional options—sedentary, light, medium, or heavy. Rather, the regulations allow ample room for more nuanced exertional findings. See id. (recognizing that Plaintiff could not do a full range of light work, but the ALJ did not err in finding her not disabled because the VE testified to available jobs that are considered "light [work] because of their weight lifting requirements, and are

9

considered 'sitting jobs'"); see also Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010) (recognizing that the claimant's RFC was between two exertional levels); Hensley v. Colvin, No. 5:13-cv-27810, 2015 WL 566626, at *17-18 (S.D. W. Va. Feb. 10, 2015) (finding that the claimant's restriction to standing and walking no more than two hours in an eight-hour workday did not conflict with a limited range of light work where the VE testified to jobs at the light exertional level). As a result, the ALJ did not err in concluding that Plaintiff's RFC allowed her to perform a limited range of "light work."

As to her second claim of error, Plaintiff argues that the ALJ erred in not using the Medical-Vocational Guidelines to make a disability finding and in not obtaining testimony from the VE regarding whether Plaintiff had any transferable skills, because determining whether Plaintiff had, or did not have, transferable skills was essential to making a disability finding using the Medical-Vocational Guidelines.

Appendix 2 to Subpart P of Part 404 of the Code of Federal Regulations sets forth the Medical-Vocational Guidelines, also referred to as the "grids." The Sixth Circuit has explained the purpose of the grid's as follows:

> Once an administrative law judge determines a plaintiff's residual functional capacity, he may use the medical-vocational guidelines, or "grids," to determine the plaintiff's level of disability and potential for employment. The grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (Tables 1, 2, and 3, respectively), and a specific rule, not applicable here, for the heavy and very heavy levels. Based on the plaintiff's residual functional capacity, the administrative law judge must first determine which table to apply, if any. For instance, if the plaintiff's residual functional capacity limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the plaintiff's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled." The [ALJ] can utilize the grids only where the grids accurately and completely describe the plaintiff's abilities and limitations. Therefore, a finding of "disabled"

or "not disabled" based solely on the grids is <u>only</u> appropriate when the ability to perform a full range of either medium, light or sedentary activities is present.

Branon v. Comm'r of Soc. Sec., 539 F. App'x 675, 679–80 (6th Cir. 2013) (internal citations omitted, emphasis added). Here, the ALJ found that because of the significant stand/walk limitations, Plaintiff's RFC allowed her to perform a limited range of light work, in other words, the ALJ found that Plaintiff's RFC fell between the category of "light work" and "sedentary."[3] If the ALJ had found that Plaintiff was able to perform jobs solely within a single exertional category, the ALJ would have used the grids to direct a disability finding. However, the range of work available to Plaintiff was not limited to sedentary work, and included a variety of jobs classified as "light work." Under the circumstances present here, the grids did not direct a finding because they did not "accurately and completely describe the plaintiff's abilities and limitation." See Anderson, 406 F. App'x at 35 (noting that "[w]here a claimant's RFC is in between two exertional levels, such as the case here where the ALJ found that Anderson could perform a limited range of light work, the grid guidelines, which reflect only common—and not all—patterns of vocational factors, are not binding and are instead used only as an analytical framework.") Id.

Based on her erroneous belief that she was confined to sedentary work and that the grids applied, Plaintiff also argues that the ALJ erred by not questioning the VE regarding the transferability of job skills because transferability of job skills is essential to determining whether the grids direct a disability finding. Because the grids did not direct a conclusion regarding disability in this case, the ALJ found that transferability of job skills was "not material to the determination of disability" and instead, as he was required to do, he used the grids as an

---

[3] Specifically, the ALJ sought information from the VE regarding jobs that "are above a full range of sedentary but less than a full range of light [work]." (Tr. 244.)

analytical framework for determining disability. (Tr. 208; see also Branon, 539 F. App'x at 680; 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(d).

> In such a situation, Social Security Ruling 83–12 directs that a [VE] be called to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with plaintiff's limitations can perform. So long as the hypothetical is accurate, the [ALJ] may rely on the vocational expert's testimony to find that the plaintiff can perform a significant number of jobs in the national economy.

Branon, 539 F. App'x at 680.

Plaintiff does not dispute that the ALJ presented the VE with hypothetical questions that covered the limitations included in her RFC. Indeed, the ALJ questioned the VE regarding all of Plaintiff's limitations, even those that he did not ultimately find credible. (Tr. 243-50.) When he questioned the VE specifically regarding the limitations in Plaintiff's RFC assessment, the VE testified to the availability of a significant number of jobs in the state and national economies that Plaintiff could perform. The VE testified that someone with Plaintiff's RFC could work as "a sewing machine operator" or a "price tagger," both classified as "light work;" a "garment inspector," classified as "light work" but with the number of jobs available in the state and national economy reduced by 30% due to Plaintiff's stand/walk limitations; and a "telemarketer" classified as "sedentary." (Tr. 208-09.) The VE testified that each of these jobs was available in significant numbers in the state and national economy, even with the 30% reduction in the "garment inspector" job. (Tr. 245-47.) Plaintiff does not dispute the accuracy of the VE's testimony.

The ALJ was entitled to, and did, rely on the VE's testimony in finding that there were jobs available to Plaintiff and thus, that she was not disabled. See Branon, 539 F. App'x at 680; see also Anderson, 406 F. App'x at 35 (noting that "[a]s long as the VE's testimony is in

response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the claimant is able to perform a significant number of jobs").

Based on the foregoing, the ALJ's decision that Plaintiff was not disabled was supported by substantial evidence on the record as a whole. Accordingly, the ALJ's decision will be affirmed.

## V. Conclusion

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record will be DENIED and the decision of the SSA will be AFFIRMED. An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE